## McNAMEE v. CHECKER CAB COMPANY, INC., AND WHITE

---

(January 30, 1928. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Automobiles—Par. 9.**
Where there is no physical injury perceptible to the doctor, called in immediately after the accident or at any future time, but plaintiff worried greatly about possibility of permanent injury and consulted a physician ten times at his own expense, he will be allowed medical bill and two hundred dollars, as the doctor says he may have suffered some pain for a while.

Appeal from Civil District Court, Division "A". Hon. H. C. Cage, Judge.

Action by John L. McNamee against Checker Cab Company, Inc., and Mr. and Mrs. F. O. White.

There was judgment for plaintiff against Checker Cab Co., Inc., and both plaintiff and Checker Cab Co. appealed.

Judgment amended and affirmed.

Habans & Coleman, of New Orleans, attorneys for plaintiff, appellant.

P. L. Fourchy, of New Orleans, attorney for Checker Cab Co., Inc., defendant, appellant.

L. P. Beard, of New Orleans, attorney for Mr. and Mrs. F. O. White, defendant, appellee.

JONES, J. This is a suit for damages for personal injuries, doctor's bill and damaged clothing in the sum of two thousand, one hundred fifty-five ($2,155.00) Dollars alleged to have been caused by a collision between the automobile of Mrs. White and a taxicab of the Checker Cab Company, in which the plaintiff herein with his wife and child were riding at the time of the collision.

The Checker Cab Company is charged with negligence for violating traffic ordinance in failing to stop and give right of way to Mrs. White, who was approaching on the right and Mrs. White is charged with negligence in violating traffic ordinance by driving her car recklessly at a speed in excess of thirty miles per hour and not looking where she was going.

The Checker Cab Company filed answer admitting negligence of Mrs. White, but averring due care on its part and denying the damages claimed. Mrs. White filed a general denial.

There was judgment dismissing suit as to Mrs. White and against Checker Cab Company for thirty-five ($35.00) dollars doctor's bill and four hundred ($400.00) dollars damages "for shock and either real or imagined pain". From this judgment both plaintiff and Checker Cab Company have appealed.

The evidence shows as follows:

Peters Avenue, which has a neutral ground with roadways on either side of a parkway, containing many palms and trees, was then paved on both sides of the neutral ground, but the paving on Franklin street commenced only on the upper side of Peters avenue.

The cab, which had been going towards the woods on Peters Avenue, upon reaching Franklin street turned to the left to go up Franklin street; and while it was on the upper side of said Peters Avenue the collision occurred. There was a large

palm in the center of the neutral ground on the lake side of Franklin street which obstructed the view and made it well nigh impossible for the driver of the cab making a left turn to Franklin street to see the Cadillac car approaching on the upper side of Peters Avenue for a distance of forty or fifty feet from the intersection and necessarily the view of the driver of any car approaching from lake on upper side of Peters Avenue would be similarly obstructed.

Henry Clement, a colored employee of the grocery on the down-town river corner of Peters Avenue and Franklin street, who came out of the store just as the taxi was passing, but paid no special attention to it until he heard the impact, swears right-hand side of Cadillac struck rear of taxi just about the center of the upper roadway; that he did not hear the taxi blow any horn, but did hear the taxi driver say immediately after accident, "Mrs. White appeared to be tying her shoe"; he noticed she was wearing slippers that couldn't be tied; taxi was going about ten or twelve miles per hour and Cadillac about fifteen.

Mrs. White, who had been driving cars for eight years without accident, says she lived near there, had just left home and was driving about fifteen miles an hour close by the neutral ground, when the taxicab, without blowing a horn, came out from behind the large bushy palm right in front of her; that she could not stop and could not have gone behind the cab without running up on the neutral ground into the palm; that plaintiff, who got out of the cab and tried to get witnesses, showed no signs whatever of injury and his wife remained in the cab; that her car was stopped by the cab and then ran down the slope to the iron post called a "nigger baby" on the uptown river corner of Peters Avenue and Franklin street, but the cab was turned around and thrown up against a tree; her engine would run, but steering gear wouldn't work.

Dr. Hoefeld, who called on plaintiff twice at his home (once at request of Cab Company by whom he was regularly retained) and saw him several times later at his office, testifies that plaintiff had no bruises, lacerations, sprains or outward signs of injury; that it "appeared to him more of a psychic condition", and he talked to plaintiff, but gave him little or no medicine; that he "would think he did suffer in the beginning from falling forward", but there was no swelling and no sign of sprain; that the patient was in bed when he saw him at home, but he did not prescribe rest, as there were no objective signs of pain; his bill of thirty-five ($35.00) dollars was for services rendered to plaintiff personally, as Cab Company paid for his visits to the house.

Becker, cab driver, says he blew horn twice as he turned into Franklin street at Peters Avenue, shifted his gear into second speed, noticed a Cadillac about three-fourths of block away coming toward him, knew he had plenty time and continued to cross at six miles per hour, looked up Franklin street, found it clear, then saw the Cadillac coming at a very fast rate about fifty feet away, blew horn twice more and hollered, but couldn't attract attention of Cadillac driver who struck his right wheel, when only four feet of his cab was still on Peters Avenue, and knocked it around twenty-five or thirty-five feet against a tree, but Cadillac didn't stop until it hit a nigger baby on uptown river corner of Peters Avenue and Franklin street, "knocking all the front end of the car". Lady, who was coming at rate of twenty-five miles per hour, when

fifty feet away was looking down in front of machine and made no attempt to stop, though she had plenty of room between cab and neutral ground to pass, at least twelve feet. Cadillac was coming about two feet from neutral ground when first seen about three-fourths of a block away, but when fifty feet away, front end of Cadillac was about six feet from neutral ground curbing and rear end about five feet; car was going sideways; the front end of his cab came into the upper roadway of Peters Avenue about the time Cadillac swerved from neutral ground to right; gas tank of cab was broken and extra tire on back was bent when cab struck the tree. He rang up for another

Clingston, superintendent of Cab Company, a few minutes after accident found cab turned around in Franklin street, front being ·about twelve feet in Franklin street when Cadillac was being pushed away from nigger baby on to neutral ground.

Mrs. McNamee, wife of plaintiff, who was seated with her back to the driver and, therefore, did not see the collision, says cab going at a moderate speed, ten or eleven miles per hour, was almost in Franklin street, when plaintiff shouted: "Look out"; cab was struck in rear, gasoline tank demolished by tree, her dress was torn and she was carried to her mother's by passing car, but not by any Checker cab.

Plaintiff, manager of billiard hall in St. Charles Hotel, testified that driver was turning into Peters Avenue about five or six miles per hour, when he happened to look out and see lady driving about thirty or forty miles per hour about three feet from uptown sidewalk of Peters Avenue, and he hollered, "look out". Lady had thirty-five feet to pass, if she had been watching; his side and arm were struck and he still suffers with nerve in lower part of hip; X-ray picture of back shows no injury; stayed in bed six days and then went to Biloxi for twelve days; rubbed back with liniment; his suit of clothes, which cost thirty-five ($35.00) dollars, was torn in back and seat of trousers and he gave it to Salvation Army; cab was just about two feet from neutral ground in Peters Avenue, when he saw Cadillac coming about twelve or twenty feet away between thirty and forty miles per hour; didn't hear driver blow his horn, but it wasn't necessary as there was no fault on his part; lady looked up when he hollered; "in a second we crashed"; a passing auto took his wife and child to her mother's; driver slowed up, but did not stop before he crossed Peters Avenue; taxicab was struck on the side; only rear wheels of taxi were still in Peters Avenue about two feet when impact occurred. First he says he could see through rear window of taxi at right angles without leaning forward; later, when told these cabs had small wooden blinds over rear window, he said he was leaning forward, by instinct, "always does when he is in an auto"; there were palms about eight or ten feet high in neutral ground and there may have been one at this corner.

On rebuttal he says Dr. Hoefeld advised him to take a rest and continue use of plaster on his back, which he did for a year off and on.

The above digest shows clearly that plaintiff and chauffeur disagree as to location of Cadillac car, the former saying that it was in two feet of upper curb of Peters Avenue when fifteen or twenty feet away and the latter that it was six feet from neutral ground running sideways. They also disagree as to blowing of horn by chauffeur and calling of another cab after

accident. Neither of them mentions obstruction of view at that corner by the palm.

As Cadillac had right of way, we agree with lower judge in thinking that the taxi driver was guilty of negligence in crossing the upper Peters Avenue roadway without stopping, particularly as his view was obstructed by the large palm. We also agree with him in thinking that plaintiff was hardly justified in giving away his suit of clothes and that the loss of his wife's dresses of twenty ($20.00) dollars is not proved, as she says it was merely torn. There is no proof that these garments could not have been repaired and at least used a while or sold for something.

We think the amount allowed for damages is too high, as the record fails entirely to show any physical injury to plaintiff and merely a "psychic" condition of worry. We think under the circumstances the judgment should be reduced to two hundred and thirty-five ($235.00) dollars.

It is, therefore, ordered, adjudged and decreed that there be judgment in favor of plaintiff, John L. McNamee, and against the Checker Cab Company in the sum of two hundred thirty-five ($235.00) dollars with legal interest from judicial demand.

It is further ordered that the judgment dismissing this suit against Mrs. J. O. White be affirmed and that plaintiff pay costs of this appeal.